IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHANNEL MARTIN, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 07 C 3458 |
| Plaintiff, | ) ) | |
| v. | ) ) | Hon. Ronald A. Guzman |
| WAL-MART STORES INC., | ) ) | Magistrate Judge Arlander Keys |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

In December 2006, Channel Martin purchased a Zune MP3 player[1] from the Wal-Mart store located in Evergreen Park, Illinois. The item was intended as a gift for her daughter, who was 12 years old at the time. But, unbeknownst to Ms. Martin, the Zune carried a gift of its own - hardcore gay porn, including 62 pictures and six and a half hours' worth of videos that had been downloaded onto the device before Ms. Martin purchased it. Shortly after she began using the device, Ms. Martin's daughter discovered the material; she was, understandably, shocked, dismayed and horrified, as was her mother when the daughter shared her discovery. Ms. Martin sued Wal-mart, hoping to turn

---

[1] An MP3 Player is a digital audio player (DAP) that uses an audio specific format known as MP3; the MP3 format "encod[es] audio in much less space than straightforward methods, by using psychoacoustic models to discard components less audible to human hearing, and recording the remaining information in an efficient manner." http://en.wikipedia.org/wiki/MP3. A Zune is a DAP made by Microsoft; it is a 30GB MP3 player featuring wireless technology, a built-in FM tuner and a 3-inch screen that allows users to showcase music, pictures and videos. *E.g.*, http://www.microsoft.com/presspass/press/2006/sep06/09-14ZuneUnveilingPR.mspx.

the case into a class action; she alleges that Wal-Mart's return policies, which allow the store to sell used electronic devices as new, amount to a breach of contract; she also alleges gross negligence arising out of that Wal-Mart's failure to remove the downloaded porn from her Zune. Wal-Mart removed the action to federal court on the basis of diversity jurisdiction, and the case was assigned to Judge Guzman, who then asked this Court to handle certain aspects of the case.

The case is currently before this Court on a discovery dispute. Ms. Martin has asked for discovery relating to Wal-Mart's return policies, not just with respect to the Zune MP3 player, but with respect to "electronic items," a category she has broadly defined to include:

> stereos, tape cassette players, stereo CD players mini systems, receivers, amplifiers, portable audio players, boom boxes, portable CD players, radios, voice recorders (but excluding speakers sold as standalone items), auto stereo equipment (excluding standalone speakers), camcorders, computers, digital cameras, DVD players & recorders, GPS & navigation devices, home theater (excluding speaker-only items), MP3 Players, TVs, and video game systems (but excluding the video games themselves).

Plaintiff's First Discovery Requests, ¶8(g)(attached as Exhibit B to Defendant's Motion for Protective Order). Additionally, Ms. Martin seeks discovery concerning the policies in place, not just at the Evergreen Park store where she purchased the offending Zune, but at all of Wal-Mart's 165 stores in Illinois. And she seeks information covering the period from May 10, 2004 through

May 10, 2007, the day she filed her complaint. Wal-Mart has objected to the discovery requests, arguing that they are overly broad and that responding to the requests as submitted would unfairly and unduly burden the company. It seeks a protective order, under Rule 26(c), limiting Ms. Martin's discovery requests to MP3 players and finding that information with respect to the other "electronic items" included in her definition is irrelevant.

> Rule 26(c) provides that, "for good cause shown" the Court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> > (1) that the disclosure or discovery not be had;
> >
> > (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
> >
> > (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
> >
> > (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters; . . . .

Establishing "good cause" requires "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Silva v. Fortis Benefits Insurance Co.*, 437 F.Supp.2d 819, 827 (N.D. Ill. 2006).

To this end, in support of its motion for a protective order, Wal-Mart submitted an affidavit from Kevin O'Connor, Wal-

Mart's corporate Vice President and General Merchandising Manager for Consumer Electronics, Computers and Cameras; Mr. O'Connor stated that he is responsible for supervising buyers of what would generally be described as "electronics" and that many of the items included in Ms. Martin's definition of "electronic items" would come within his jurisdiction, though others would not (notably, car stereos and items considered by Wal-Mart to be children's toys). *See* Affidavit of Kevin O'Connor, ¶3 (attached as Exhibit D to Wal-Mart's Motion for Protective Order). He further stated that, in his experience, Ms. Martin's definition of "electronic items" would actually include tens of thousands of different items, and that each product has various models and colors, any one of which might be discontinued in six months or less and replaced with different models or colors, which would then be recorded as different items. *Id.*, ¶5. He stated that each of the different items would have "different shelf lives, valuations, warranty periods, return periods, conditions, packages and memory capacity (or lack thereof)" and that grouping these items by such categories "would be a Herculean effort, requiring hundreds, if not thousands, of man hours." *Id.*, ¶¶7-8.

In addition to Mr. O'Connor's affidavit, Wal-Mart submitted affidavits from Eric Bright, the current Audio Buyer for Wal-Mart Stores, Inc., and Jim Scantlin, the current Director of Enterprise Information Management within Wal-Mart Stores, Inc.'s corporate Information Systems Division. Mr. Bright's affidavit

4

was submitted for the sole purpose of demonstrating that the number of MP3 players sold by Wal-Mart from May 2004 through September 2007 was incredibly high; the chart attached to his affidavit shows that Wal-Mart's standard record-keeping practices allow it to create a list, by item number, of all of the MP3 makes and models offered in its stores across the country and online. The list is seven pages long and shows a little over 50 entries per page, which suggests that the number of MP3 products is roughly half of what Wal-Mart represented it to be in its briefs.[2] Moreover, the Court notes that, if Wal-Mart eliminated from the list products available only through online sales - which are not at issue here and which are not included in Ms. Martin's discovery requests - the list of products would shrink dramatically; indeed, looking at just those products available for purchase from stores in Illinois - which is the way Ms. Martin limited her requests - it appears that there are just over 150 products. The Court's quick analysis of the chart offered by Wal-Mart to demonstrate the oppressive nature of the task presented by Ms. Martin, in fact, shows just the opposite. It also shows Wal-Mart's apparent penchant for exaggeration. And it is hard to imagine that Wal-Mart could, with a straight face, make any claim of undue burden caused by discovery requests

---

[2] In its reply brief, Wal-Mart stated that "[f]or MP3 players - alone - Wal-Mart is able to assess over 700 different products or models; and, this is just one 'electronic item' out of the twenty-two 'electronic items' sought." Reply Brief, p. 2.

limited in this fashion.

Mr. Scantlin, who is responsible for supervising the computer systems that track sales at Wal-Mart's stores, stated in his affidavit that information regarding purchases and returns would be "readily accessible" for two years only; after that, he stated, the data would be automatically replaced. *See* Affidavit of Jim Scantlin, ¶4 (attached to Wal-Mart's Reply Brief at Exhibit F). Based upon Mr. Scantlin's affidavit, Wal-Mart asks the Court to limit the relevant time period for discovery to two years. The Court declines to do so. Significantly, Wal-Mart doesn't say that the information going back to 2004 is unavailable; it says simply that two-years' worth of information is "readily accessible"; discovery is not limited to information that is "readily accessible." Ms. Martin's discovery requests define the relevant time period as the three years prior to the filing of the complaint, through the filing of the complaint (i.e., from May 10, 2004 through May 10, 2007). The chart attached to Mr. Bright's affidavit – which covers exactly this time period – would seem to suggest that Wal-Mart has the ability to provide information for this time period.

Although the Court largely rejects Wal-Mart's claims of undue burden and oppression, the Court is nonetheless persuaded, after parsing through Ms. Martin's allegations and the materials submitted by the parties in connection with this motion, that Ms. Martin's discovery requests are too broad, and that the relevant

definition of "electronic items" here should be limited to the item sold to Ms. Martin - the Zune MP3 player, as well as any other electronic items included in the return policy covering the Zune MP3 player.

Initially, the Court notes that the allegations are based upon Wal-Mart's decision to sell as new items that were returned; the damages claimed stem from the diminution in value that occurs when an item is purchased and removed from the store, once its "shelf life" begins to tick away, as it were. Given that pretty much every item available for sale at Wal-Mart would begin to depreciate in this way, and given that allowing discovery and claims concerning all items would surely be unwieldy (to say the least), the Court must find some relevant way of cutting the issue down to size. Based upon the nature of Ms. Martin's claims, the most logical means is to limit discovery according to the particular policy and practices at issue. Wal-Mart's corporate policies do not lump all "electronic items" into a single category. Rather, as the policies submitted demonstrate, Wal-Mart groups these items into three distinct categories: (1) "computer components and computer accessories; (2) camcorders and digital cameras; and (3) computers, digital music players, portable video players, GPS units and postpaid cell phones. The return policy governing the last group - the group within which the Zune MP3 would fall - is the only policy relevant to this lawsuit. And, accordingly, the Court will limit discovery to

7

those "electronic items" listed in that policy. As it pertains to Ms. Martin's definition of "electronic items," the Court will allow discovery with respect to computers, DVD players & recorders, GPS & navigation devices, MP3 Players, and video game systems (but excluding video games themselves); the Court will strike from the definition stereos, tape cassette players, stereo CD player mini systems, receivers, amplifiers, portable audio players, boom boxes, portable CD players, radios, voice recorders, auto stereo equipment, camcorders, digital cameras, home theater and TVs.

Although it did not factor in the Court's analysis today, it would appear that Judge Guzman would similarly have been inclined to limit discovery based upon the specific policies applicable to the Zune; at a recent hearing, he told the parties:

> "[m]y guess is that how we define electronic products in this case is going to depend to a large extent on your client's policy and practices. If it's the same policy and practice for 5,000 objects within which the one the plaintiff purchased in this case falls, when we may be looking at 5,000 different objects. . . . If it's a different policy for iPods and Verizon Wireless phones, then we don't have to deal with Verizon Wireless phones.

Transcript of Proceedings from September 12, 2007, pp. 10-11 (attached as Exhibit G to Wal-Mart's Reply Memorandum).

Finally, the Court considers whether, by asking for discovery relating to sales in Wal-Mart stores throughout the state of Illinois, Ms. Martin has cast too wide a net. She has not. Wal-Mart has not argued that each store establishes its own

return policies; on the contrary, based upon what Wal-Mart submitted, the relevant policies would seem to be issued from the corporate office in Arkansas and applied uniformly at stores throughout the country. The Court, therefore, declines to narrow the geographic scope of Ms. Martin's requests.

## Conclusion

For the reasons explained above, the Court grants in part and denies in part Wal-Mart's motion for protective order [#30]. Wal-Mart is ordered to respond to discovery using the revised definition of "electronic items" set forth in this opinion – namely, it is to provide discovery with respect to computers, DVD players & recorders, GPS & navigation devices, MP3 Players, and video game systems (but excluding video games themselves). Wal-Mart need not provide discovery with respect to the remainder of the items listed in Ms. Martin's original definition. Wal-Mart's attempt to limit discovery to two years is rejected, as is any attempt to limit the number of stores from which discovery will be permitted.

Dated: December 4, 2007

E N T E R E D:

*Arlander Keys*
Arlander Keys
United States Magistrate Judge